EXHIBIT 1

1  Timothy A. Loranger, State Bar No. 225422
2  Matthew P. French, State Bar No. 327814
   WISNER BAUM LLP
3  11111 Santa Monica Blvd., Suite 1750
   Los Angeles, CA 90025
4  Telephone: (310) 207-3233
   Facsimile: (310) 820-7444
5  *tloranger@wisnerbaum.com*

6  Jose L. Becerra, Esq., *Pro Hac Vice Pending*
7  Ferraro Law Firm
   Brickell World Plaza
8  600 Brickell Ave
   Suite 3800
9  Miami, FL 33131
   Tel:  (305) 375-0111
10 jbecerra@ferrarolaw.com
   *Attorneys for Plaintiff*
11

12            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
13
               **FOR THE COUNTY OF SAN FRANCISCO**
14

15 | ROSA MARTINEZ, Individually and as | **CASE NO:** |
   | Personal Representative of the Estate of | |
16 | SEBASTIAN MEJIA, | **COMPLAINT** |

17 |        Plaintiff, |
18 | | 1. Failure to Warn |
   | v. | 2. Negligence |
19 | | 3. Premises Liability |
   | | 4. Negligent Misrepresentation |
20 | AIRBNB, INC., AIRBNB TRAVEL, | 5. Fraud, Deceit, and Intentional |
   | LLC, AIRBNB PAYMENTS, INC., |    Misrepresentation |
21 | | 6. Negligence Per Se |
   |        Defendants | 7. Breach of Fiduciary Duty |
22 | | 8. Violation of California Business and |
   | |    Professions Code § 1750, et seq |
23 | | 9.  Violation of California Business and |
   | |    Professions Code § 17500 |
24

25            **DEMAND FOR JURY TRIAL**
26            **[Amount demanded exceeds $25,000]**

27

28

-1-
COMPLAINT

1

## **TABLE OF CONTENTS**

I.     INTRODUCTION……..………………………………………………4

II.    PARTIES……………………………………………………………....7

III.   JURISDICTION AND VENUE…………………………………........8

IV.    FACTS RELEVANT TO ALL CAUSES OF ACTION……………..…………..8

       A.    The Deceased, Sebastian Mejia……………………..………………...8

       B.    Sebastian Suffers Carbon Monoxide Poisoning and Dies at an Airbnb

       Property………………………………………………………………10

       Police Investigation Confirms Sebastian's Cause of Death (Carbon Monoxide

       Poisoning)…………………………………………………………….12

       C.    Airbnb……………………………………………………………13

       D.    Airbnb's Efforts to Ensure Guest Safety………………………………...18

       E.    Airbnb's Knowledge of the Risks of Carbon Monoxide Poisoning…........23

       F.    Agency Relationship……………………………………………………27

V.     CAUSES OF ACTION……………………………………………..28

       A.    Count I - Wrongful Death and Survival Claim for Failure to Warn……..28

       B.    Count II - Wrongful Death and Survival Claim for Negligence………...31

       C.    Count III - Wrongful Death and Survival Claim for Premises Liability..34

       D.    Count IV -Wrongful Death and Survival Claim for Negligent

             Misrepresentation……………………………………………………...37

       E.    Count V - Wrongful Death and Survival Claim for Fraud, Deceit, and

             Intentional Misrepresentations………………………………..………40

       F.    Count VI - Wrongful Death and Survival Claim for Negligence Per Se...42

G.    Count VII - Wrongful Death and Survival Claim for Breach of Fiduciary
      Duty..........................................................................................................45

H.    Count VIII - Claim for Violation of the Consumers Legal Remedies Act,
      California Civil Code § 1750, et seq……………………………….…....48

I.    Count IX - Claim for Violation of California Business and Professions
      Code §17500…………………………………………………………......53

VI.   PRAYER FOR RELIEF…………………………………………………...57

VII.  JURY DEMAND…….…………………………………………………..…...59

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Rosa Martinez, Individually and as Personal Representative of the Estate of Sebastian Mejia, by and through the undersigned counsel, and hereby sues Defendants Airbnb, Inc., Airbnb Travel, LLC, and Airbnb Payments, Inc. (collectively referred to herein as "Airbnb"), and in support thereof alleges as follows:

### I.    INTRODUCTION

1.    In late September 2022, Sebastian Mejia ("Sebastian") rented an Airbnb property for a short-term rental beginning on or about October 1, 2022.   When he rented the property, Airbnb promised him a safe home.  Indeed, Airbnb's digital platform is littered with propaganda regarding "guest safety" and "security."  Unbeknownst to Sebastian, the property was a deathtrap.

2.    On October 5, 2022, Sebastian turned on the fuel burning water heater located inside of the bathroom to shower with warm water.  Due to an improperly installed and damaged exhaust duct, the water heater began emitting dangerously high levels of carbon monoxide into the bathroom, slowly poisoning him.  Soon thereafter, Sebastian collapsed and died from carbon monoxide poisoning.  His body was found the following day, naked, lying in the shower, face up, with the water running.  He was 24 years of age.

3.    Police investigation revealed that the water heater's exhaust duct was improperly connected and damaged.  In addition, the bathroom lacked proper ventilation and the water heater was improperly installed inside of the bathroom, in violation of applicable building code.  Equally frustrating, the Airbnb property did not have a carbon monoxide alarm.  These factors, individually and in conjunction, resulted in a lethal amount of carbon monoxide accumulating in the bathroom while Sebastian showered, causing his untimely death.

4.      Airbnb—a for-profit publicly traded company recently valued at $79 billion—facilitated and controlled every aspect of Sebastian's rental of the Airbnb property.  Airbnb made the property available for rent, accepted Sebastian's reservation, took Sebastian's advanced payment, provided check-in instructions, facilitated communication between Sebastian and the property owner, offered a refund policy, a 24-hour safety line, instituted rules governing the use of the property, offered guest support, and disbursed fees owed to the property owner.  For its services, Airbnb was paid a service fee and commissions.

5.      Of paramount importance, Airbnb owed Sebastian a duty to use reasonable and ordinary care.  Indeed, Airbnb promised Sebastian that it would take measures to "ensure" his safety.  Moreover, Airbnb's website and mobile applications are plastered with representations regarding "guest safety."  Airbnb proclaims that safety is one of its "top priorities" and that it wants "everyone to feel safe when traveling via Airbnb."  Per Airbnb, "achieving this mission starts with building out the right products, policies, and teams to promote a safe and reliable experience before, during, and after the trip."  Numerous examples exist reflecting Airbnb's acknowledgment of its duty to use reasonable and ordinary care.  For example, Airbnb recently launched a "Trust & Safety Advisory Coalition" and allegedly partnered with various experts, including the "International Association of Fire Chiefs," to improve guest safety.  In addition, Airbnb runs home safety workshops with local fire departments to provide its members "with the latest advice from leading experts."  It also offers a 24-hour safety line.

6.      Airbnb regularly enacts and enforces rules and regulations regarding guest safety.  For example, in 2020, Airbnb imposed a cap on the number of people allowed to occupy an Airbnb property.  In 2022, following a string of shootings that broke out nationwide at Airbnb properties, Airbnb issued a permanent global party ban.  Airbnb regularly runs

background checks aimed at identifying registered sex offenders, among other dangerous individuals. It prohibits its property hosts from harassing guests, installing surveillance, and being discriminatory, among various other rules and regulations aimed at ensuring guest safety.

7.      Sebastian was not the first Airbnb guest to die from carbon monoxide poisoning due to Airbnb's negligence. In 2013, a 35-year-old Canadian woman died at an Airbnb property in Taiwan. In 2018, a couple from New Orleans died at an Airbnb property in Mexico. In April 2019, a Florida resident died at an Airbnb property in Colombia. In May 2019, six tourists from Brazil died at an Airbnb property in Chile. In December 2021, a 25-year-old female from California died while showering from carbon monoxide poisoning during her stay at an Airbnb property in Mexico. In November 2022, three Americans died at an Airbnb property in Mexico. Like Sebastian, these victims died due to carbon monoxide poisoning from a fuel burning water heater.

8.      Despite these incidents and Airbnb's knowledge regarding the risks associated with fuel burning appliances in Airbnb rental properties, Airbnb has never required the use of carbon monoxide alarms in regular Airbnb properties that contain fuel burning appliances. Equally reprehensible, Airbnb does not even tell its customers that certain properties have fuel burning appliances, or how to safely operate them. Here, for example, the listing for the Airbnb property where Sebastian died said nothing about the existence of a fuel burning water heater, how to safely operate the fuel burning water heater, or the potential health risks associated with carbon monoxide poisoning.

9.      It is without question—Airbnb's failure to use reasonable and ordinary care caused Sebastian's death. Airbnb failed to take reasonable measures to address a hazard it was fully and intimately aware of. It misled and defrauded Sebastian into thinking that the Airbnb

property was safe for use.  As a result of Airbnb's negligence, Sebastian suffered carbon monoxide poisoning and died on October 5, 2022.  Sebastian is survived by his mother Rosa Martinez and father Jaime Mejia.

## II.  PARTIES

10.     Decedent, Sebastian Mejia ("Sebastian"), was a resident of Naples, Florida, at the time of his death.

11.     Plaintiff, Rosa Martinez, is the mother of Sebastian and the duly appointed personal representative of his estate.

12.     Jaime Mejia is Sebastian's surviving father.

13.     Defendant, Airbnb, Inc., is a Delaware Corporation doing business in the state of California and has a principal place of business at 99 Rhode Island Street, San Francisco, CA 94103.

14.     Defendant, Airbnb Travel, LLC, is a Delaware Corporation doing business in the state of California and has a principal place of business at 888 Brannan Street, San Francisco, CA 94103.

15.     Defendant, Airbnb Payments, Inc., is a Delaware Corporation doing business in the state of California and has a principal place of business at 888 Brannan 20 Street, San Francisco, CA 94103.

16.     Defendants, Airbnb, Inc., Airbnb Travel, LLC, and Airbnb Payments, Inc. are collectively referred to herein as "Airbnb."  Reference to Airbnb includes present and former officers, directors, agents, employees, and all other persons acting or purporting to act on behalf of Airbnb or its predecessors, subsidiaries, and affiliates, including but not limited to any franchisees.

### III.   JURISDICTION AND VENUE

17.     Jurisdiction and venue are proper in the Superior Court of the County of San Francisco, State of California, pursuant to California Code of Civil Procedure § 395 because Airbnb, Inc. has its principal place of business in San Francisco and the amount in controversy exceeds the minimal jurisdictional requirement of the Court.

18.     Plaintiff does not assert claims or rights arising under the Constitution, treaties, or laws of the United States; thus, there is no federal question at issue pursuant to 28 U.S.C. § 1331.

19.     Plaintiff, Rosa Martinez, is the duly appointed, qualified, and acting personal representative of the estate of decedent, Sebastian, and brings the following claims for damages on behalf of all of the persons entitled to bring a cause of action for the wrongful death of Sebastian pursuant to sections 377.34 and 377.60, California Code of Civil Procedure including Rosa Martinez and Jamie Mejia.

### IV.   FACTS RELEVANT TO ALL CAUSES OF ACTION

#### A.   The Deceased, Sebastian Mejia

20.     Sebastian was born on May 9, 1998, in Miami, Florida, to Colombian immigrants Rosa Martinez and Jaime Mejia.

21.     Sebastian grew up in Miramar, Florida, and attended Pembroke Pines Charter Elementary School.  In 2008, his family moved to Naples, Florida, where he attended Corkscrew Elementary School and Corkscrew Middle School.  In 2016 he graduated Summa Cum Laude from Palmetto Ridge High School, where he worked as a cafeteria worker and participated in the swim, band, and childcare programs.

22.     On his own volition, Sebastian conducted genealogical research to learn more about the Muisca and Panche people, from whom he is a descendant.  Interested in reconnecting

with his ancestors' community, language, and culture, he began to research the Muisca's history and their struggle for recognition as an indigenous community in Colombia. While doing this personal research, he came across similar movements in Brazil and immediately developed an interest in the plurality of the movements and the similarities between the two countries. Alongside his friends, he organized a grassroots and community-based organization, "718 Coalition," committed to community empowerment, education, abolition, and liberation from all forms of violence for marginalized people.

23.     Sebastian received Florida's Academic Scholars Award to attend Florida State University ("FSU"), graduating Summa Cum Laude in May 2020 with a dual bachelor's degree in Latin American and Caribbean Studies and International Affairs with a minor in Portuguese.

24.     During his undergraduate studies, he worked as an English instructor and childcare provider in Managua, Nicaragua, as a teacher and tutor in Tallahassee and Naples, Florida, volunteered with the Tallahassee Bail Fund and the Frenchtown Urban Farm, and was the Director and Event Coordinator for the Coalition for Latinx Studies at FSU. For his strong academic track record, he was awarded a myriad of grants and fellowships, including the Foreign Language & Area Studies Fellowship and Service Scholars Award.

25.     In the spring of 2021, Sebastian was awarded a Departmental Fellowship at New York University ("NYU") and began his graduate studies at the Center for Latin American and Caribbean Studies at NYU that fall. Throughout his graduate studies, he engaged in coursework related to indigeneity, social movements, and the ways that processes of capitalism impact Indigenous communities, in Brazil and Colombia.

26.     At the time of his passing, Sebastian was finishing his master's degree in Latin American and Caribbean Studies while also completing his Fulbright Research Program under

the mentorship of faculty from the Institute of History at the Federal University of Rio de Janeiro. He was awarded a Tinker Foundation Field Research Grant to further his interdisciplinary research, traveling to archival sites in Sao Paulo and Brasilia, and was accepted to Ph.D. preview programs at Brown, Princeton, and Yale.

**B. Sebastian Suffers Carbon Monoxide Poisoning and Dies at an Airbnb Property**

27.     The Airbnb property where Sebastian died is located at Vila Rua Farani 3, Apt. 308, Botafogo, Rio de Janeiro, Brazil (the "Airbnb Property").

28.     At all relevant times, the Airbnb Property was owned by Henrique Estides Delgado ("Host Defendant").

29.     Sebastian rented the Airbnb Property through Airbnb's Platform in late September 2022 for a short-term rental beginning on or about October 1, 2022.   To facilitate the short-term rental, Airbnb used the internet, email, text messaging and/or telephone services to communicate with Sebastian.

30.     Upon making his reservation, Airbnb sent Sebastian a confirmation email and receipt.  These communications reflect that Sebastian's reservation was made by "Airbnb, Inc.," located at "888 Brannan St., San Francisco, CA 94103."  Per the receipt, "Airbnb Payments, Inc." served as the "collection agent" for purposes of processing Sebastian's payment.

31.     The listing for the Airbnb Property described the property as a "renovated apartment with fully equipped kitchen and washing machine" located in a "secure building" with "24-hour security."   The listing further stated that the Airbnb Property was a "fully equipped apartment ready for home office."   The listing further reflected that the Airbnb Property had 4.89 stars, 18 reviews, and was hosted by Charlotte, an alleged "Superhost."  Per

Airbnb, "Superhosts" are "experienced, highly rated hosts who are committed to providing great stays for guests."

32.     The listing for the Airbnb Property, under a section titled "heating and cooling," identified the following appliances: AC-split type ductless system, ceiling fan, and portable fans.  Under a section titled "kitchen and dining," the listing identified a kitchen, refrigerator, cooking basics, dishes, silverware, freezer, dishwasher, gas stove, oven, hot water kettle, and coffee maker.  The listing for the Airbnb Property did not mention or identify the fuel burning water heater.

33.     The Airbnb Property did not have a carbon monoxide alarm (a life-saving device that can be purchased for as low as $21.99), which otherwise would have alerted Sebastian of the hazard before it became fatal.

34.     Airbnb never told, advised, or warned Sebastian (a) that the Airbnb Property had a fuel burning water heater, an appliance capable of emitting carbon monoxide, (b) that the fuel burning water heater was installed inside of the bathroom, which lacked proper ventilation, in violation of applicable building code, (c) that the fuel burning water heater was defective and/or damaged and not safe for use, (d) that he needed to bring a handheld or portable carbon monoxide alarm, (e) not to use or turn on the fuel burning water heater, or (f) about the health risks associated with carbon monoxide poisoning.

35.     In selecting the Airbnb Property as a short-term rental, Sebastian reasonably relied on (a) Airbnb's numerous representations regarding the Airbnb Property, including its safety, (b) Airbnb's reputation as a trusted operator and concierge of short-term rental properties including its devotion to guest safety, and (c) Airbnb's various representations regarding the importance of "safety" on its website, mobile applications, press releases, and

public announcements.  Sebastian reasonably relied on the listing for the Airbnb Property in selecting the property while believing the Airbnb Property was safe for use.

36.    On or around October 5, 2022, Sebastian turned on the fuel burning water heater located inside of the bathroom of the Airbnb Property.  Due to a defective and/or damaged exhaust duct, the fuel burning water heater started emitting dangerously high levels of carbon monoxide—a colorless, odorless, tasteless, and deadly gas—into the bathroom while Sebastian showered.  Unbeknownst to Sebastian, the fuel burning water heater was defective and/or damaged, resulting in a lethal amount of carbon monoxide accumulating in the bathroom.  In addition, the bathroom lacked proper ventilation, in violation of building code.  As a result, Sebastian suffered carbon monoxide poisoning and died of the same on October 5, 2022, while showering.

37.    Despite becoming aware of Sebastian's death on or around October 6, 2022, Airbnb made no efforts whatsoever to communicate the passing of Sebastian to his family or extend any condolences.

38.    Had Sebastian been adequately informed and/or warned about the dangerous condition of the Airbnb Property, he would not have stayed at the property or would have otherwise taken additional precautions to avoid the risk of carbon monoxide poisoning.

**C.    Police Investigation Confirms Sebastian's Cause of Death (Carbon Monoxide Poisoning)**

39.    On October 6, 2022, at 3:30 p.m., the Technical and Scientific Division of the Rio de Janeiro Police Department (the "Authorities") arrived at the Subject Property and found Sebastian's body lying in the shower, face up, clothes less, and with the water running.  Per the Authorities, Sebastian's body showed signs of pulmonary edema and carbon monoxide poisoning.

40.     On October 10, 2022, at 4:23 p.m. the Rio de Janeiro Police Department (the "Police") took the statement of Mr. Delgado, the owner of the Airbnb Property.  Mr. Delgado could not say whether or when the fuel burning water heater was inspected for safety.  He could not remember receiving any calls regarding maintenance of the water heater.

41.     On October 11, 2022, the Authorities inspected the Subject Property to determine whether a carbon monoxide leak contributed to Sebastian's death.  The Authorities made the following findings: (a) The water heater's exhaust duct was damaged; (b) The water heater's exhaust duct was improperly connected; (c) The water heater was installed inside of the bathroom, in violation of applicable building and safety codes; (d) The bathroom did not have adequate ventilation, in violation of applicable building and safety codes; and (e) After performing a five-minute carbon monoxide air measurement test, the Authorities measured a carbon monoxide level of 17 parts per million inside of the bathroom, four times higher than the expected value.

### D.  **Airbnb**

42.     Founded in August 2008 and based in San Francisco, California, Airbnb is a highly sophisticated online provider and seller of real estate, travel, and hospitality services.

43.     Through its website and mobile applications (the "Airbnb Platform"), Airbnb offers an online venue that enables Airbnb subscribers ("Members") to publish, search for, and purchase real estate, travel, and hospitality services.  Members can publish and offer accommodations, activities, excursions, events, journeys, and a variety of other travel services (as "Hosts").  Members can also search for, book, and use real estate, travel, and hospitality services (as "Guests").

44.     Through the Airbnb Platform, Airbnb sells limited licenses to enter, occupy, and use properties all over the world.  In addition, Members can purchase activities, excursions,

events, journeys, and a variety of other travel services directly from the Airbnb Platform.  To facilitate and effectuate these transactions, Airbnb serves as a broker, operator, coordinator, manager, and agent.

45.     Airbnb calls itself "the world's leading marketplace to list, discover, and book unique accommodations."  Through the Airbnb Platform, Airbnb lists, promotes, and rents over six million listings in 191 countries, and on any given night two million Guests stay in Airbnb properties.  Since 2007, Airbnb has grown to over 4 million Hosts who have welcomed 1.4 billion guest arrivals in almost every country across the globe.

46.     One must register an account to use the Airbnb Platform. At registration, Airbnb obtains, processes, and uses each Member's personal information.  Airbnb obtains every Member's name, last name, phone number, address, email address, date of birth, and profile photo.  For safety and security, every Member must verify his or her identity with government-issued identification.

47.     At registration, one is presented with various and lengthy "clickwrap agreements" (online agreements that users must agree to by clicking a button or checking a box that says "I agree").  In doing so, one must agree to treat everyone in the Airbnb community with "respect, and without judgment or bias."  If one declines, he or she will not be able to use the Airbnb Platform.

48.     Among the various clickwrap agreements is Airbnb's Terms of Service (a 55-page agreement).  Airbnb's Terms of Service explain that such terms "remain [sic] in effect until either you or we terminate the agreement in accordance with these terms."  One must also read and accept Airbnb's Payments Terms of Service (62-page agreement), Privacy Policy (17-page agreement), and Nondiscrimination Policy (8-page agreement).

49.     Airbnb closely tracks and monitors each Member's activity. When one uses the Airbnb Platform, he or she agrees that Airbnb can collect his or her geolocation information, usage information, log data and device information, and payment transaction information.

50.     For safety and security and to the extent permitted by law, Airbnb obtains Members' criminal records, sex offender registrations, and other relevant information about each Member's background.

51.     Airbnb provides tools that allow its Hosts to easily create listings for property rentals, activities, excursions, events, journeys, and a variety of other travel services. Airbnb suggests, recommends, and advises its Hosts on how to effectively rent their properties by describing various characteristics of the property including but not limited to the number of bedrooms available, the number of bathrooms available, the size of the property, special features of the property, and local attractions or things to do in the area.  Airbnb suggests, recommends, and advises its Hosts on rental prices based on the property's geographic location, size, and the rental price of similar properties, among other factors.  If a Host does not have enough rental bookings, Airbnb suggests, recommends, and advises them on how to drive more traffic to his or her webpage to promote more rental bookings.

52.     Airbnb offers professional photography services to its Hosts for the sole purpose of increasing revenue and profits.  Airbnb boasts that Hosts with professional photos may earn "up to 20% increase in earnings" and "up to 20% more bookings."  In turn, Airbnb creates content, including photographs and descriptions, with information provided by its Hosts.

53.     When a Member books an Airbnb property or experience, he or she agrees to pay all charges for the booking including the price, applicable fees such as Airbnb's service fee, offline fees, and taxes, and any other items identified during checkout.  In doing so, one

agrees that Airbnb may charge the payment method used to book the Airbnb property to collect damage claim amounts, if necessary.  These payments are made directly to Airbnb.

54.     As explained in Airbnb's Terms of Service and Payments Terms of Service, Airbnb is an "agent" for its Members with respect to collecting, processing, and distributing fees, commissions, and/or rental payments.  Through its role as agent, Airbnb handles payment disputes, damage claims, and collects and/or remits applicable taxes to the relevant tax authority on behalf of its Members.

55.     For its services, Airbnb takes fees and commissions.  For every booking, Airbnb takes and processes the Guest's advanced payment.  Airbnb collects a 3% commission from its Hosts, and up to a 14.2% service fee from its Guests.  Airbnb takes a percentage of the payment as a fee and commission and disburses payment to the Host 24 hours after the Guest checks in or commences his or her experience.  In addition, Airbnb offers its Guests payment plans, keeps track of payments, facilitates cancellations, and offers coupons, credits, and gift cards.

56.     When a Member wants to make a reservation, Airbnb works as a travel agent, consultant, and/or broker in facilitating each Member's travel plans.  Airbnb invites its Members to insert certain information into the Airbnb Platform to assist with his or her reservation, such as date, location, and guest count.  In turn, Airbnb provides its Guests with lists of available rental properties, information about the locality, photographs, ratings, comments from other Members, safety information, and various representations regarding the quality and characteristics of each Airbnb Property.

57.     When a Member makes a reservation, he or she receives various emails directly from Airbnb.  First, the Member receives a confirmation email, which includes information needed to check-in, check-out, contact the Host, comply with the Host's rules, and seek

customer support.  In addition, the email contains a link titled "Safety & Property."  Upon accessing the link, the Member is directed to a webpage where he or she is told to "avoid surprises by looking over these important details about your Host's property." Thereunder, Airbnb provides information concerning "safety considerations" and "safety devices."

58.     In addition to the confirmation email, the Member receives a "receipt from Airbnb."  In that email, Airbnb provides a breakdown of all charges such as nightly rate, cleaning fee, service fee, and applicable taxes.  If the Member has a question, he or she can access a Help Center to find "details about payments and refunds."  In this email, Airbnb reaffirms its role as agent—"Airbnb Payments is a limited payment collection agent of your Host."

59.     Airbnb's customer service is extensive.  For example, it manages a resolution center where Members can notify Airbnb and/or seek compensation if his or her real or personal property is damaged.  Hosts can file for reimbursement for damages or unexpected cleaning. Guests and Hosts can also send or request money for extra services or refunds.

60.     When necessary, Airbnb takes down listings if found to be in violation of the law, reasonable standards, or community considerations.

61.     When a Guest rents and stays at an Airbnb property, Airbnb and the Host share common, dual, divided, and/or joint control over the Airbnb property during the Guest's stay. For example, Airbnb decides who is allowed to rent any Airbnb property.  If Airbnb's Platform flags a reservation because the Guest has a particular criminal record or propensity to host parties, he or she will not be allowed to rent that property.  Airbnb also enacts and enforces rules of conduct governing its Members' behavior.  Every Airbnb Member is required to follow Airbnb's "Community Standards and Health and Safety Requirements."  Airbnb mandates that

every Guest treat Airbnb properties "like your own," follow the Host's rules, and communicate promptly with the Host if issues come up.  Guests cannot leave an Airbnb property in a state that requires excessive cleaning.  Airbnb even governs how Guests must dispose of trash.  Airbnb prohibits parties, disorderly conduct, and disruptive gatherings.  Airbnb also requires that every Host "refrain" from endangering or threatening anyone."  Airbnb prohibits its Hosts from using cameras or surveillance during a Guest's stay.  Airbnb also has and enforces extensive and detailed rules regarding Covid-19 safety practices.   Airbnb is "committed to enforcing [its] ground rules."  To this end, Airbnb routinely suspends or removes Members, rental properties, and experiences from its Platform.

### E.   Airbnb's Efforts to Ensure Guest Safety

62.    Airbnb's business model revolves around selling curated real estate, travel, and hospitality services and directing and sending Guests to properties listed on Airbnb's Platform.  In these situations, Airbnb owes a duty to its customers to use reasonable and ordinary care with respect to the properties it controls, makes available, promotes, rents, and profits from.

63.    Airbnb's Terms of Service explicitly incorporate Airbnb's "Community Policy."  Per Airbnb, the Community Policy, plus various other policies, "form part of your agreement with Airbnb."  Airbnb's Community Policy tells its Members "[w]hat to expect, and what will be expected of you, as a Member of the Airbnb Community."

64.    As stated in Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."  Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards."  Airbnb also promised that every Airbnb property would have "essential amenities."

65.    Airbnb boasts that "keeping our Airbnb family safe is one of our top priorities." Per Airbnb, "working to keep our global community safe, both online and offline, is a top priority."

66.    On its website and in its terms and conditions, Airbnb proclaims that it wants "everyone to feel safe when traveling via Airbnb."  Per Airbnb, "achieving this mission starts with building out the right products, policies, and teams to promote a safe and reliable experience before, during, and after the trip – and we cannot do this without our partners." Airbnb knows that "having subject matter experts share their expertise with our teams helps us facilitate a positive environment for our Hosts and Guests."

67.    Per Airbnb, "your Airbnb experience begins the moment you embrace adventure. That's only possible when you trust this community and feel safe."  For this reason, Airbnb requires (and promises) that every Host will "refrain from endangering or threatening anyone."

68.    In limited circumstances reserved for the most profitable properties and wealthier Guests, i.e., "Airbnb Plus," Airbnb mandates the use of carbon monoxide alarms.  Via "Airbnb Plus," Airbnb offers its Guests an exclusive collection of elite and high-end homes. To achieve Airbnb Plus status, a Host applicant must maintain a 4.8 customer satisfaction rating, accept at least 95% of booking requests, and not cancel any reservations over the previous year.  Per Airbnb, "Airbnb Plus is a new tier of homes on Airbnb that have been verified for quality and comfort."  Airbnb Plus homes "have been inspected and verified in person against 100-point checklist covering design, amenities, and hospitality."  As part of the 100-point checklist, applicant Hosts must ensure that each property has a lock, bedrooms with individual locks, windows in bedrooms and bathrooms that provide privacy, and smoke

detectors.  In addition, each applicant Host must ensure that there is a carbon monoxide alarm and that it works as intended.  Sadly, Airbnb does not implement this life-saving requirement for its regular, non-Airbnb Plus properties, such as the property where Sebastian died.

69.     Airbnb launched a "Trust & Safety Advisory Coalition" and allegedly partnered with "22 respected organizations" to improve guest safety.  Among those organizations, Airbnb partnered with the "International Association of Fire Chiefs."  In addition, Airbnb runs home safety workshops with local fire departments to provide its members "with the latest advice from leading experts."

70.     Airbnb regularly works with "approved background check providers."  To become an Airbnb Member, one needs to upload an official government identification, allowing Airbnb to perform background checks on its Members.  Airbnb uses its Members' personal data to screen for registered sex offenders, among other areas of inquiry.  In this regard, Airbnb sends its Members "messages, updates, security alerts, and account notifications."  Per Airbnb, it uses its Members' personal data to "create and maintain a trusted and safer environment" and to "protect the health and well-being of our Guests, Hosts, Hosts' employees, and members of the public."

71.     If a Guest feels unsafe during a trip, Airbnb recommends that he or she "contact Airbnb to report the issue."  Airbnb tells its Members that Airbnb is available 24 hours a day, seven days a week, to address safety concerns.

72.     Airbnb has a "Neighborhood Support" hotline.  Through this hotline, Airbnb enforces its standards of behavior on its Guests by responding to neighbor complaints.  Airbnb contacts its Guests, addresses issues, and when necessary, evicts them.  These measures are performed at Airbnb's discretion.

73.     With respect to "Airbnb Adventures," Airbnb "partnered with the Adventure Travel Trade Association, experts in adventure travel, to define best practices and standards for safety."

74.     Airbnb ranks its Hosts and issues "Superhost Badges."   This creates an appearance that these Hosts, endorsed by Airbnb, are safer and more reliable professionals.

75.     Airbnb provides "AirCover" with every reservation.   AirCover is "the most comprehensive protection in travel."   It includes a booking protection guarantee, check-in guarantee, get-what-you-booked guarantee, and a 24-hour safety line.

76.     Airbnb takes out "Host Protection Insurance" that acts "as primary insurance and provides liability coverage to Hosts."

77.     Airbnb provides "Airbnb Host Guarantee" which protects Hosts against damages to their own possessions or unit of property by their Guests.

78.     Airbnb routinely implements and enforces rules, policies, and procedures regarding the safe use of Airbnb properties.   In 2020, for example, Airbnb issued a temporary party ban at Airbnb properties.   It also capped the number of people allowed to occupy an Airbnb property at 16.   In 2022, following a string of shootings that broke out nationwide at Airbnb properties, Airbnb issued a permanent global party ban.   Per Airbnb, banning parties "developed into a bedrock community policy to support our Hosts and their neighbors."   Airbnb said the ban is meant to "deter the very rare cases of Hosts who do not operate responsibly, or guests who try to throw unauthorized parties."   To enforce these measures, Airbnb's reservation screening system uses signals and artificial intelligence to determine whether the reservation carries a higher risk of these incidents.

79.   In addition to its party ban, Airbnb also prohibits excessive noise, excessive visitors, excessive trash/littering, smoking nuisances, parking nuisances, trespassing, and vandalism.

80.   In addition, Airbnb enforces rules and guidelines created by its Hosts regarding the use of Airbnb properties by directly contacting Guests and demanding compliance.  Airbnb also cancels rental agreements for Airbnb properties when instructed by its Hosts.  Hosts can tell Airbnb whether to return rents or deposits collected on their behalf and the amount to return.

81.   Airbnb has specific rules concerning the use of weapons at Airbnb properties. For example, Airbnb requires "that all weapons that are present at a listing must be properly stored and secured."  People who violate this rule "may be suspended or removed from the site." In addition, Airbnb specifically prohibits assault weapons, unsecured weapons, explosive devices, incendiary devices, and dangerous animals.

82.   Airbnb also has specific rules governing its Hosts' conduct.  For example, Hosts may not (a) decline a booking based on race, color, ethnicity, national origin, religion, sexual orientation, gender identity, or marital status, (b) impose any different terms or condition based on race, color, ethnicity, national origin, religion, sexual orientation, gender identity, or marital status, or (c) post any listing or make any statement that discourages or indicates a preference for or against any Guest on account of race, color, ethnicity, national origin, religion, sexual orientation, gender identity, or marital status.  In addition, Airbnb prohibits its Hosts from harassing guests, installing surveillance, and being discriminatory.

83.   Airbnb previously held out to the public Nick Shapiro ("Mr. Shapiro") as its Global Head of Trust and Risk Management and informed the public that "he was previously the CIA's Deputy Chief of Staff and Senior Advisor to former CIA Director John Brennan"

and "has served on the National Security Council staff and was a White House spokesman for President Obama."

84.     Mr. Shapiro (no longer with Airbnb) was part of Airbnb's Trust and Safety Team, made up of mostly ex-military.  The primary purpose of Airbnb's Trust and Safety Team is to intervene and allegedly help Airbnb victims.  But in reality, the primary purpose of Airbnb's Trust and Safety Team is to prevent negative publicity when things go horribly wrong during an Airbnb stay.  For example, in 2015, a 29-year-old Australian woman was raped in a New York City Airbnb property she rented.  Led by Mr. Shapiro, Airbnb's Trust and Safety Team sprang into action, relocated the victim to a hotel, paid for her mother to fly in from Australia, flew them both home, and offered to cover any health or counseling costs.  Thereafter, the Trust and Safety Team kept tabs on the criminal investigation and sent a staff member to court to see if Airbnb was mentioned during a proceeding.

85.     Despite Airbnb's pledge to make safety a top priority, Airbnb is virtually silent when it comes to alerting Guests about the hazards of carbon monoxide poisoning from fuel burning appliances and has never mandated the use of carbon monoxide alarms or required its Hosts to perform routine inspections of fuel burning appliances.

**F.   Airbnb's Knowledge of the Risks of Carbon Monoxide Poisoning**

86.     Carbon monoxide is an odorless, colorless gas that can kill you.  It is found in fumes produced any time you burn fuel in cars or trucks, small engines, stoves, gas ranges, and water heaters.  Per the Centers for Disease Control and Prevention, every year at least 420 people die in the United States from carbon monoxide poisoning.  More than 100,000 people in the United States visit the emergency department each year due to accidental carbon monoxide poisoning.

87.     Airbnb has known for years that Airbnb properties with fuel burning appliances pose a hazard of carbon monoxide poisoning.  In 2013, a 35-year-old Canadian woman visiting Taiwan stayed at an Airbnb property.  A leaking water heater filled the apartment with carbon monoxide.  As a result, she suffered carbon monoxide poisoning and died.   The property did not have a carbon monoxide alarm.

88.     In November of 2018, Edward Winders and Barbara Moller, a couple from New Orleans, tragically died in their sleep from carbon monoxide poisoning while staying at an Airbnb property in Mexico.  Following the loss, Edward Winders' son, Eric Winders, told ABC News that, "[t]his is a devastating loss that totally – should not have happened." Eric Winder then released a statement to the press stating, "Airbnb is a leader in the hospitality and vacation rental world, we would like to call on them to create an inspection system within their platform." Airbnb later informed ABC that the Mexican apartment would be removed from the site.

89.     In April of 2019, Peter J. Kraus, a resident of Florida, died from carbon monoxide poisoning while staying at an Airbnb property in Colombia.

90.     In May of 2019, six tourists from Brazil died from carbon monoxide poisoning while staying at an Airbnb property in Chile.

91.     In December of 2021, Daisy Saucedo, a 25-year-old resident of California, died while showering from carbon monoxide poisoning during her stay at an Airbnb property in Mexico.

92.     In November of 2022, three Americans, Jordan Marshall, Courtez Hall, and Kandace Florence, died from carbon monoxide poisoning while staying at an Airbnb property in Mexico. Following the incident, Freida Florence, the mother of Kandace Florence, publicly

pleaded with Airbnb to change their policy: "They don't obligate or require their hosts to guarantee a carbon monoxide detector, and they should. Doing so could truly save lives. We don't want any other families to experience what we've experienced."

93.     In response to the fatal tragedy in Taiwan in 2013, Airbnb started giving away carbon monoxide alarms as well as first-aid kits, smoke alarms and safety cards regarding emergency preparedness.  Although Airbnb purportedly provided these benefits for free, Hosts had to first request them from Airbnb.  After a Host received his or her free carbon monoxide alarm, Airbnb did nothing to ensure such alarms were utilized.

94.     Although Airbnb claims it offers free carbon monoxide alarms, in a 2018 study, public health researchers found that only 58% of Hosts said they installed them.

95.     Despite these predictable yet avoidable fatalities, Airbnb has never required that its standard rental properties with fuel burning appliances have carbon monoxide alarms or that its Hosts perform routine safety inspections to ensure that fuel burning appliances are safe for use.

96.     In an article on its website dated March 29, 2022, titled "[w]hat you need to know about carbon monoxide safety," Airbnb states that "[c]arbon monoxide exposure is a common cause of fatal poisoning around the world."  Airbnb goes on, explaining that "[h]igh levels of carbon monoxide exposure can be fatal, and it's impossible to detect without a carbon monoxide alarm.  By installing carbon monoxide alarms in your space, guests can be alerted if carbon monoxide levels increase above a safe level."  For these reasons, Airbnb encourages (but does not require) its Hosts to install carbon monoxide alarms.  Airbnb also encourages (but does not require) its Hosts to update listings to indicate whether the property has a carbon monoxide alarm, or does not need one because there are no fuel-burning appliances.  Despite

these recommendations, there remains no requirement that properties with fuel burning appliances include carbon monoxide alarms or that Hosts perform routine safety inspections to ensure fuel burning appliances are safe for use.

97.     In an article on its website titled "[h]ome safety: smoke and carbon monoxide alarms," Airbnb proclaims that carbon monoxide alarms "save lives."  For this reason, Airbnb is allegedly "on a mission to get as many alarms into as many homes as possible."  Airbnb "strongly" urges (but does not require) its Hosts to "install smoke and carbon monoxide alarms in spaces that use fuel-burning appliances, test them regularly, and make sure their listing description is up to date."  Airbnb "provides self-contained, battery powered, combination smoke and carbon monoxide alarms to eligible Hosts at no cost," but does not require that its rental properties with fuel burning appliances include carbon monoxide alarms.

98.     In another article on its website titled "[p]reparing your listing with safety essentials," Airbnb acknowledges that "[i]nstalling a carbon monoxide alarm is a simple step that can save lives."  Airbnb "asks" (but does not require) that all properties be equipped with carbon monoxide alarms "if the listings have fuel burning devices."

99.     Airbnb does nothing to ensure or require compliance with its "requests" regarding carbon monoxide alarms.  These hollow pronunciations are nothing more than efforts to seem responsible, shift blame, and insulate Airbnb from liability.

100.    In limited circumstances, Airbnb requires its Hosts to install carbon monoxide alarms.

101.    Despite having intimate knowledge of the risks associated with carbon monoxide poisoning, Airbnb has never (a) mandated the use of carbon monoxide alarms, (b) required its Hosts to perform routine safety inspections of fuel burning appliances, (c)

adequately warned any of its Guests about the risks associated with carbon monoxide poisoning, or (d) adequately informed its Guests about the existence of fuel burning appliances at Airbnb properties.

102.     The reason why Airbnb has been unwilling to adequately warn and protect its Guests, such as Sebastian, was revealed in 2016 when its CEO, Brian Chesky, declared that "[t]his company is first and foremost about the hosts, not the guests."

### G.   Agency Relationship

103.     Airbnb entered into an agreement with Host Defendant to act as his agent for purposes of facilitating short-term rentals of Host Defendant's Airbnb Property.  Airbnb agreed to act on Host Defendant's behalf with respect to making the Airbnb Property available for rent, finding and screening potential tenants, facilitating rental transactions, receiving and disbursing rent payments, recovering damages, and handling customer service, among other responsibilities.

104.     Airbnb and Host Defendant shared a fiduciary relationship whereby Host Defendant authorized Airbnb to act under his control and on his behalf with respect to making the Airbnb Property available for rent, facilitating short-term rentals of the Airbnb Property, receiving and disbursing rent payments, and handling customer service, among other responsibilities.

105.     Host Defendant benefits from Airbnb's services via the profits he receives from the rental of his Airbnb Property through the efforts employed by his agent, Airbnb.

## V.   CAUSES OF ACTION

### A. COUNT I – WRONGFUL DEATH AND SURVIVAL CLAIM FOR NEGLIGENT FAILURE TO WARN

106.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

107.    Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."   Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards." Airbnb also promised that every Airbnb property would have "essential amenities."

108.    At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

109.    By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

110.    At all relevant times, a special relationship existed between Airbnb and Sebastian.

111.    At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

112.    Airbnb knew or should have known that (a) the Airbnb Property was unreasonably dangerous and unsafe for use due to a defective and/or damaged fuel burning

water heater located in the Airbnb Property, (b) the elevated risks posed to Sebastian, including the risk of carbon monoxide poisoning, while staying at the Airbnb Property, and (c) that Sebastian would not realize or otherwise learn of the unreasonably dangerous and extremely hazardous condition within the Airbnb Property without adequate instruction, warnings, training, and proper safety equipment.

113.    By listing, promoting, and renting a property Airbnb knew had a fuel burning water heater, failing to require routine inspection of the fuel burning water heater, and failing to mandate the use of a carbon monoxide alarm, Airbnb created a foreseeable zone of risk and/or danger for Guests staying at the Airbnb Property, including Sebastian.

114.    At all relevant times, Airbnb owed a duty to adequately warn Sebastian about (a) the existence of the fuel burning water heater at the Airbnb Property, (b) the damaged condition of the fuel burning water heater at the Airbnb Property, (c) the hazards associated with carbon monoxide poisoning from the fuel burning water heater, and (d) the necessity to bring a personal carbon monoxide alarm due to the existence of the fuel burning water heater at the Airbnb Property.

115.    Airbnb breached its duty to exercise reasonable and ordinary care or skill by (a) failing to adequately warn Sebastian that the Airbnb Property contained a fuel burning water heater located in the bathroom of the Airbnb Property, a device capable of releasing dangerous levels of carbon monoxide, (b) failing to adequately warn Sebastian of the health hazards associated with exposure to carbon monoxide from the fuel burning water heater, (c) failing to adequately warn Sebastian that the fuel burning water heater located in the bathroom of the Airbnb Property was defective and/or damaged, (d) failing to adequately warn Sebastian not to use the fuel burning water heater located in the bathroom of the Airbnb Property, and (e) failing

to adequately instruct and warn Sebastian to use a handheld and/or personal carbon monoxide alarm while renting and staying at the Airbnb Property.

116.    As a result of Airbnb's negligence and failure to exercise reasonable and ordinary care, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.  Sebastian's death was a reasonably foreseeable result of Airbnb's acts and/or omissions.

117.    Airbnb's negligence, gross negligence, and failure to exercise reasonable and ordinary care was a proximate cause of Sebastian's death.

118.    As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

119.    As a further proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

120.    As a further proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

121.    Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representative of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable

law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

122.    At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

**B. <u>COUNT II – WRONGFUL DEATH AND SURVIVAL CLAIM FOR NEGLIGENCE</u>**

123.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

124.    Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."  Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards."  Airbnb also promised that every Airbnb property would have "essential amenities."

125.    At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

126.    By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

127.    At all relevant times, a special relationship existed between Airbnb and Sebastian.

128.    At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

129.    At all relevant times, Airbnb owed its Guests, including Sebastian, a duty to take reasonable and ordinary steps to ensure that the Airbnb Property was safe for use and free of deadly hazards.

130.    Airbnb knew or should have known that (a) the Airbnb Property was unreasonably dangerous and unsafe for use due to a defective and/or damaged fuel burning water heater located in the Airbnb Property, (b) the elevated risks posed to Sebastian, including the risk of carbon monoxide poisoning, while staying at the Airbnb Property, and (c) that Sebastian would not realize or otherwise learn of the unreasonably dangerous and extremely hazardous condition within the Airbnb Property without adequate instruction, warnings, training, and proper safety equipment.

131.    Airbnb breached the duties owed to Sebastian by (a) failing to take reasonable and ordinary steps to ensure that the Airbnb Property was safe for use and free of deadly hazards during Sebastian's stay, (b) failing to take reasonable and ordinary steps to ensure that the fuel burning water heater located inside of the Airbnb Property was safe for use during Sebastian's stay, and (c) failing to take reasonable and ordinary steps to ensure that the Airbnb Property was equipped with a carbon monoxide alarm.

132.    As a result of Airbnb's negligence and failure to exercise reasonable and ordinary care, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof. Sebastian's death was a reasonably foreseeable result of Airbnb's acts and/or omissions.

133.    Airbnb's negligence, gross negligence, and failure to exercise reasonable and ordinary care was a proximate cause of Sebastian's death.

134.    As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

135.    As a further proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

136.    As a further proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

137.    Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representative of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

138.    At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

## C. COUNT III – WRONGFUL DEATH AND SURVIVAL CLAIM FOR PREMISES LIABILITY

139. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

140. During Sebastian's stay at the Airbnb Property, Airbnb and Host Defendant shared common, dual, divided, and/or joint control of the Airbnb Property.

141. Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions." Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging." For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards." Airbnb also promised that every Airbnb property would have "essential amenities."

142. At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

143. By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

144. At all relevant times, a special relationship existed between Airbnb and Sebastian.

145. At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

146.    At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in facilitating the rental of the Airbnb Property and operating, controlling, possessing, and/or maintaining the Airbnb Property in a reasonably safe condition.

147.    At all relevant times, Airbnb knew or in the exercise of reasonable and ordinary care should have known that the Airbnb Property was unfit for its intended use as a rental property, thereby subjecting Sebastian to an unreasonable risk of harm.

148.    At all relevant times, Airbnb knew or in the exercise of reasonable and ordinary care should have known that the Airbnb Property had a defective and/or damaged fuel burning water heater and that the Airbnb Property did not have a carbon monoxide alarm, thereby subjecting Sebastian to an unreasonable risk of harm.

149.    Airbnb breached its duty to exercise reasonable and ordinary care or skill by (a) negligently failing to maintain the Airbnb Property in a reasonably safe condition, (b) negligently failing to maintain the Airbnb Property with an adequate fuel burning water heater, (c) negligently failing to maintain the Airbnb Property with a carbon monoxide alarm, thereby predisposing the Airbnb Property to dangerous levels of carbon monoxide while being used as a rental property, (d) negligently maintaining the Airbnb Property in such a manner that allowed a dangerous condition—dangerous levels of carbon monoxide to persist during its intended use, and (e) negligently failing to warn Sebastian that the Airbnb Property had a defective and/or damaged fuel burning water heater capable of releasing dangerously high levels of carbon monoxide.

150.    At all relevant times, Airbnb knew or in the exercise of reasonable care should have known that it was in a superior position to Sebastian to recognize or uncover said dangerous conditions upon the Airbnb Property.  Moreover, Airbnb knew or in the exercise of

reasonable care should have known that Sebastian would not realize or otherwise learn of the dangerous conditions upon the Airbnb Property.

151.    As a result of Airbnb's negligence and failure to exercise ordinary care, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

152.    Sebastian's death was a reasonably foreseeable result of Airbnb's acts and/or omissions.

153.    Airbnb's negligence, gross negligence, and failure to exercise ordinary care was a proximate cause of Sebastian's death.

154.    As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

155.    As a direct and proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

156.    As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

157.    Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representative of the Estate of Sebastian, is entitled to recover all

survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

158.    At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

### D. <u>COUNT IV – WRONGFUL DEATH AND SURVIVAL CLAIM FOR NEGLIGENT MISREPRESENTATION</u>

159.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

160.    At all relevant times, Airbnb marketed, promoted, made available, and supplied the Airbnb Property to its Members, including Sebastian, as a short-term rental property.  In doing so, Airbnb sold and provided real estate, travel, and hospitality services by identifying, securing, marketing, making available for rent, and facilitating rental transactions associated with the Airbnb Property.

161.    At all relevant times, Airbnb intentionally and knowingly made false and negligent representations as to a past and/or existing fact, with the intent to deceive and/or defraud, which Sebastian reasonably relied upon in booking the Airbnb Property, including but not limited to the following: (a) Airbnb intentionally misrepresented to Sebastian that it would take reasonable measures to ensure Guest safety; (b) Airbnb intentionally misrepresented to Sebastian that it was a licensed real estate broker capable of lawfully collecting fees and/or commissions related to the Airbnb Property; (c) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property was habitable and safe for use; (d) Airbnb intentionally

misrepresented to Sebastian that the Airbnb Property complied with all applicable building codes and ordinances; (e) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property had been inspected for safety; (f) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a fuel burning water heater in the bathroom of the Airbnb Property, an appliance capable of emitting dangerous levels of carbon monoxide; and (g) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a defective and/or damaged fuel burning water heater in the bathroom of the Airbnb Property.

162.    At all relevant times, Airbnb was aware of the falsity of its representations regarding the Airbnb Property.

163.    At all relevant times, Sebastian was unaware of the falsity of Airbnb's representations regarding the Airbnb Property.

164.    At all relevant times, Airbnb intended to deceive and/or defraud Sebastian into believing that the Airbnb Property was habitable and safe for use.

165.    Sebastian reasonably relied on Airbnb's misrepresentations and if he had known that Airbnb's representations were false, he would not have agreed to engage in a short-term rental of the Airbnb Property.

166.    As a result of Airbnb's fraud, deceit, and fraudulent misrepresentations and Sebastian's reliance thereon, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

167.    Airbnb's fraud, deceit, and fraudulent misrepresentations were a proximate cause of Sebastian's death.

168.     As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

169.     As a direct and proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

170.     As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

171.     Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representative of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

172.     At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

### E. COUNT V – WRONGFUL DEATH AND SURVIVAL CLAIM FOR FRAUD, DECEIT, AND INTENTIONAL MISREPRESENTATIONS

173.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

174.     At all relevant times, Airbnb marketed, promoted, made available, and supplied the Airbnb Property to its Members, including Sebastian, as a short-term rental property.  In doing so, Airbnb sold and provided real estate, travel, and hospitality services by identifying, securing, marketing, making available for rent, and facilitating rental transactions associated with the Airbnb Property.

175.     At all relevant times, Airbnb intentionally and knowingly made false and negligent representations as to a past and/or existing fact, with the intent to deceive and/or defraud, which Sebastian reasonably relied upon in booking the Airbnb Property, including but not limited to the following: (a) Airbnb intentionally misrepresented to Sebastian that it would take reasonable measures to ensure Guest safety; (b) Airbnb intentionally misrepresented to Sebastian that it was a licensed real estate broker capable of lawfully collecting fees and/or commissions related to the Airbnb Property; (c) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property was habitable and safe for use; (d) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property complied with all applicable building codes and ordinances; (e) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property had been inspected for safety; (f) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a fuel burning water heater in the bathroom of the Airbnb Property, an appliance capable of emitting dangerous levels of carbon monoxide; and (g) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb

Property had a defective and/or damaged fuel burning water heater in the bathroom of the Airbnb Property.

176.    At all relevant times, Airbnb was aware of the falsity of its representations regarding the Airbnb Property.

177.    At all relevant times, Sebastian was unaware of the falsity of Airbnb's representations regarding the Airbnb Property.

178.    At all relevant times, Airbnb intended to deceive and/or defraud Sebastian into believing that the Airbnb Property was habitable and safe for use.

179.    Sebastian reasonably relied on Airbnb's misrepresentations and if he had known that Airbnb's representations were false, he would not have agreed to engage in a short-term rental of the Airbnb Property.

180.    As a result of Airbnb's fraud, deceit, and fraudulent misrepresentations and Sebastian's reliance thereon, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

181.    Airbnb's fraud, deceit, and fraudulent misrepresentations were a proximate cause of Sebastian's death.

182.    As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

183.    As a direct and proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

184.   As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

185.   Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's fraud, deceit, and fraudulent misrepresentations described herein. Plaintiff, Rosa Martinez, as the Personal Representatives of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

186.   At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

## F.   COUNT VI – WRONGFUL DEATH AND SURVIVAL CLAIM FOR NEGLIGENCE *PER SE* – VIOLATION OF § 10131, CALIFORNIA BUSINESS AND PROFESSIONS CODE

187.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

188.   Airbnb leased, offered to lease, placed for rent, sold a license for, solicited listings of places for rent, solicited prospective tenants and/or collected rent from real property, thereby falling within the definition of a real estate broker within section 10131 of the California Business and Professions Code.

189.     Real estate brokers must be licensed in the state of California pursuant to section 10131 of the California Business and Professions Code.

190.     The purpose of these statutes, i.e., the statutes requiring those falling within the definition of a broker to hold a broker's license, is to protect the public from incompetent and untrustworthy individuals engaging in the enumerated activities within the real estate field.

191.     Sebastian fell within the class of people sought to be protected by section 10131 of the California Business and Professions Code.

192.     Despite engaging in the activities delineated within section 10131 of the California Business and Professions Code, Airbnb does not hold a broker's license.

193.     In fact, Airbnb's unlicensed actions are prohibited under section 10131 of the California Business and Professions Code.

194.     In failing to engage in little, if any, safety investigation regarding the properties Airbnb makes available for rent, including the subject Airbnb Property, Airbnb created and continues to create a foreseeable risk of harm to people such as Sebastian who relied upon Airbnb's assertion "**keeping our Airbnb family safe is one of our top priorities**."

195.     Such failure created a foreseeable risk of harm, which caused irreparable damages by Sebastian's untimely death because of the dangerous conditions existing at the Airbnb Property.

196.     Such conduct lies at the heart of protecting the public from unlicensed individuals and/or companies carrying on activities that fall within the role of a licensed broker.

197.     Airbnb's conduct was offensive and objectionable to a reasonable person.

198.     Sebastian belongs to the class of persons that the California Business and Professions Code were meant to protect.

199.     As a direct and proximate result of Airbnb's failure to adhere to state licensing requirements of section 10130 of the California Business and Professions Code, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

200.     Airbnb's conduct was a proximate cause of Sebastian's death.

201.     As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

202.     As a direct and proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

203.     As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

204.     Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representatives of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

205.     At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

## G. COUNT VII – WRONGFUL DEATH AND SURVIVAL CLAIM FOR BREACH OF FIDUCIARY DUTY

206.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

207.     Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."  Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards."  Airbnb also promised that every Airbnb property would have "essential amenities."

208.     At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

209.     By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a fiduciary duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

210.     At all relevant times, Sebastian reasonably relied on Airbnb's reputation and representations in becoming a Member of Airbnb, choosing to utilize Airbnb as a source for his property rental needs, and engaging in commerce with Airbnb.  In holding itself out in such a

manner, Airbnb acted as a fiduciary to Sebastian in that their relationship was founded on the trust and confidence in the integrity of Airbnb.

211.    At all relevant times, a special relationship existed between Airbnb and Sebastian.

212.    At all relevant times, a fiduciary relationship existed between Airbnb and Sebastian.

213.    At all relevant times, Airbnb owed Sebastian a fiduciary duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

214.    Airbnb, through its employees, contractors, and/or agents, knew or should have known that (a) the Airbnb Property was unreasonably dangerous and unsafe for use due to a defective and/or damaged fuel burning water heater located in the Airbnb Property, (b) the elevated risks posed to Sebastian, including the risk of carbon monoxide poisoning, while staying at the Airbnb Property, and (c) that Sebastian would not realize or otherwise learn of the unreasonably dangerous and extremely hazardous condition within the Airbnb Property without adequate instruction, warnings, training, and proper safety equipment.

215.    By listing, promoting, and renting a property it knew had a fuel burning water heater, failing to require routine inspection of the fuel burning water heater, and failing to mandate the use of a carbon monoxide alarm, Airbnb created a foreseeable zone of risk and/or danger for Guests staying at the Airbnb Property, including Sebastian.

216.    At all relevant times, Airbnb owed a fiduciary duty to adequately warn Sebastian about (a) the existence of the fuel burning water heater at the Airbnb Property, (b) the damaged condition of the fuel burning water heater at the Airbnb Property, (c) the hazards

associated with carbon monoxide poisoning from the fuel burning water heater, and (d) the necessity to bring a personal carbon monoxide alarm due to the existence of the fuel burning water heater at the Airbnb Property.

217.     Airbnb breached its fiduciary duty to exercise reasonable and ordinary care or skill by (a) failing to adequately warn Sebastian that the Airbnb Property contained a fuel burning water heater located in the bathroom of the Airbnb Property, a device capable of releasing dangerous levels of carbon monoxide, (b) failing to adequately warn Sebastian of the health hazards associated with exposure to carbon monoxide from the fuel burning water heater, (c) failing to adequately warn Sebastian that the fuel burning water heater located in the bathroom of the Airbnb Property was defective and/or damaged, (d) failing to adequately warn Sebastian not to use the fuel burning water heater located in the bathroom of the Airbnb Property, and (e) failing to adequately instruct and warn Sebastian to use a handheld and/or personal carbon monoxide alarm while renting and staying at the Airbnb Property.

218.     Airbnb breached its fiduciary duty to Sebastian and acted in a manner that contradicted and breached Airbnb's expected duties by failing to disclose that Airbnb does not take any affirmative acts whatsoever to ensure that (a) Airbnb properties are safe for use, (b) fuel burning appliances at Airbnb properties are regularly inspected and safe for use, or (c) Airbnb properties are in compliance with applicable safety codes and regulations.

219.     Airbnb breached its fiduciary duty to Sebastian when it failed to provide the required and necessary real estate, travel, and hospitality services, as agreed to by Airbnb.

220.     As a direct and proximate result of Airbnb's breach of fiduciary duty, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

221.    Airbnb's conduct was a proximate cause of Sebastian's death.

222.    As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

223.    As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

224.    Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representatives of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.  On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

225.    At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

**H.   <u>COUNT VIII – CLAIM FOR VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, et seq.</u>**

226.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

227.     At all relevant times, Airbnb marketed, promoted, made available, and supplied the Airbnb Property to its Members, including Sebastian, as a short-term rental property.  In doing so, Airbnb sold and provided real estate, travel, and hospitality services in identifying, securing, marketing, making available for rent, and facilitating rental transactions associated with the Airbnb Property.

228.     Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."  Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards."  Airbnb also promised that every Airbnb property would have "essential amenities."

229.     At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

230.     By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a fiduciary duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

231.     At all relevant times, a special relationship existed between Airbnb and Sebastian.

232.     At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

233.   At all relevant times, Sebastian reasonably relied on Airbnb's reputation and representations in becoming a Member of Airbnb, choosing to utilize Airbnb as a source for his property rental needs, and engaging in commerce with Airbnb.  In holding itself out in such a manner, Airbnb acted as a fiduciary to Sebastian in that their relationship was founded on the trust and confidence in the integrity of Airbnb.

234.   At all relevant times, Airbnb intentionally and knowingly made false and negligent representations as to a past and/or existing fact, with the intent to deceive and/or defraud, which Sebastian reasonably relied upon in booking the Airbnb Property, including but not limited to the following: (a) Airbnb intentionally misrepresented to Sebastian that it would take reasonable measures to ensure Guest safety, (b) Airbnb intentionally misrepresented to Sebastian that it was a licensed real estate broker capable of lawfully collecting fees and/or commissions related to the Airbnb Property, (c) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property was habitable and safe for use, (d) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property complied with all applicable building codes and ordinances,  (e) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property had been inspected for safety, (f) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a fuel burning water heater in the bathroom of the Airbnb Property, an appliance capable of emitting dangerous levels of carbon monoxide, and (g) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a defective and/or damaged fuel burning water heater in the bathroom of the Airbnb Property.

235.   At all relevant times, Airbnb was aware of the falsity of its representations regarding the Airbnb Property.

236.     At all relevant times, Sebastian was unaware of the falsity of Airbnb's representations regarding the Airbnb Property.

237.     At all relevant times, Airbnb intended to deceive and/or defraud Sebastian into believing that the Airbnb Property was habitable and safe for use.

238.     Sebastian reasonably relied on Airbnb's misrepresentations and if he had known that Airbnb's representations were false, he would not have agreed to engage in a short-term rental of the Airbnb Property.

239.     As a result of Airbnb's fraud, deceit, and fraudulent misrepresentations and Sebastian's reliance thereon, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

240.     Airbnb's fraud, deceit, and fraudulent misrepresentations were a proximate cause of the death of Sebastian.

241.     Through its unfair and/or deceptive acts and/or practices, Airbnb violated section 1770, Consumers Legal Remedies Act, by (a) making false and misleading representations regarding the quality of the services it provides, (b) making false and misleading representations regarding the quality of the Airbnb Property Sebastian rented, (c) creating advertisements that are misleading or likely to deceive reasonable consumers, and/or (d) engaging in the unlawful practice of engaging in the business of, act in the capacity of, advertise as, or assume to act as a real estate broker or a real estate salesperson without first obtaining a real estate license, in violation of section 10130 of the California Business and Professions Code.

242.     As a result of Airbnb's fraud, deceit, and fraudulent misrepresentations and Sebastian's reliance thereon, Sebastian sustained extensive exposure to carbon monoxide on or around October 5, 2022, suffered carbon monoxide poisoning, and died as a result thereof.

243.     Airbnb's fraud, deceit, and fraudulent misrepresentations were a proximate cause of the death of Sebastian.

244.     As a direct and proximate result of each tort specified and alleged herein, Sebastian's parents, Rosa Martinez and Jaime Mejia, have been deprived of Sebastian's society, comfort, attention, services, and financial support.  In addition, Plaintiff has incurred funeral and burial expenses associated with the death of her son, Sebastian.

245.     As a direct and proximate result of each tort specified and alleged herein, Sebastian incurred compensatory damages prior to his death in an amount to be proven at trial.

246.     As a direct and proximate result of each tort specified and alleged herein, Sebastian suffered bodily injury and resulting pain and suffering, disability, permanent scarring and disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, as well as all damages allowable under applicable law.

247.     Plaintiff asserts a claim for allowable survival damages as a direct and proximate result of Airbnb's negligent acts and/or omissions described herein.  Plaintiff, Rosa Martinez, as the Personal Representatives of the Estate of Sebastian, is entitled to recover all survival damages pursuant to California Code of Civil Procedure 377.30, and other applicable law, for the injuries suffered by Sebastian.

248.     Plaintiff seeks an order, pursuant to section 1780, California Civil Code, for injunctive relief and restitution as authorized for violations of 1700, California Civil Code.

Specifically, Plaintiff demands that Airbnb remedy its violations by immediately suspending the listing for the Airbnb Property, and all listings for properties with fuel burning appliances, until (a) all fuel burning appliances have been professionally inspected and found to be safe for use, (b) all Airbnb properties with fuel burning appliances have carbon monoxide alarms, and (c) the listings for such properties are updated with information regarding the existence of fuel burning appliances and instructions regarding the safe use and handling of such appliances.

249.     Plaintiff seeks declaratory and injunctive relief, including public injunctive relief, regarding the violations of section 1770, Consumers Legal Remedies Act.

250.     On or about October 31, 2022, Plaintiff gave Defendants written notice of her intention to commence this action.

251.     On or about March 3, 2023, Plaintiff provided proper written notice pursuant to section 1782, California Civil Code, to Airbnb regarding its unlawful and deceptive practice under the California Consumers Legal Remedies Act and demanded correction.

252.     At all relevant times, Airbnb's conduct amounted to malice, oppression, and/or fraud.  In addition, Airbnb's conduct was willful, wanton, reckless and/or grossly negligent thereby entitling Plaintiff to an award of punitive damages and prejudgment interest for all damages.

## I.  COUNT IX – CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500

253.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

254.     Section 17500, Business & Professions Code, provides that it is unlawful for any corporation to knowingly make, by means of any advertising device or otherwise, any false, untrue or misleading statement with the intent to sell a product or service, or to induce the

public to purchase a product or service.  Such statements that are likely to deceive members of the public, such as Sebastian, constitute false and misleading advertising under section 17500, Business & Professions Code.

255.    At all relevant times, Airbnb marketed, promoted, made available, and supplied the Airbnb Property to its Members, including Sebastian, as a short-term rental property.  In doing so, Airbnb sold and provided real estate, travel, and hospitality services in identifying, securing, marketing, making available for rent, and facilitating rental transactions associated with the Airbnb Property.

256.    Per Airbnb's Community Policy, Airbnb takes various measures "to help ensure safe stays, experiences, and interactions."  Per Airbnb, "safety," "security" and "reliability" are "central pillars in our efforts to ensure safety and foster belonging."  For these reasons, Airbnb agreed that Airbnb properties would be "free of undisclosed safety hazards."  Airbnb also promised that every Airbnb property would have "essential amenities."

257.    At all relevant times, Sebastian's interests as a customer of Airbnb were entitled to legal protection against Airbnb's conduct.

258.    By regularly enacting rules, policies, and procedures aimed at ensuring Guest safety, promoting the importance of Guest safety on Airbnb's Platform, and agreeing to undertake to come to the aid of its Guests, such as Sebastian, Airbnb assumed a fiduciary duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

259.    At all relevant times, a special relationship existed between Airbnb and Sebastian.

260.    At all relevant times, Airbnb owed Sebastian a duty to exercise reasonable and ordinary care in providing real estate, travel, and hospitality services and facilitating the rental of the Airbnb Property.

261.    At all relevant times, Sebastian reasonably relied on Airbnb's reputation and representations in becoming a Member of Airbnb, choosing to utilize Airbnb as a source for his property rental needs, and engaging in commerce with Airbnb.  In holding itself out in such a manner, Airbnb acted as a fiduciary to Sebastian in that their relationship was founded on the trust and confidence in the integrity of Airbnb.

262.    At all relevant times, Airbnb intentionally and knowingly made false and negligent representations as to a past and/or existing fact, with the intent to deceive and/or defraud, which Sebastian reasonably relied upon in booking the Airbnb Property, including but not limited to the following: (a) Airbnb intentionally misrepresented to Sebastian that it would take reasonable measures to ensure Guest safety; (b) Airbnb intentionally misrepresented to Sebastian that it was a licensed real estate broker capable of lawfully collecting fees and/or commissions related to the Airbnb Property; (c) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property was habitable and safe for use; (d) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property complied with all applicable building codes and ordinances;  (e) Airbnb intentionally misrepresented to Sebastian that the Airbnb Property had been inspected for safety; (f) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb Property had a fuel burning water heater in the bathroom of the Airbnb Property, an appliance capable of emitting dangerous levels of carbon monoxide; and (g) Airbnb intentionally omitted disclosure and/or deceptively withheld that the Airbnb

Property had a defective and/or damaged fuel burning water heater in the bathroom of the Airbnb Property.

263.    At all relevant times, Airbnb was aware of the falsity of its representations regarding the Airbnb Property.

264.    At all relevant times, Sebastian was unaware of the falsity of Airbnb's representations regarding the Airbnb Property.

265.    At all relevant times, Airbnb intended to deceive and/or defraud Sebastian into believing that the Airbnb Property was habitable and safe for use.

266.    Sebastian reasonably relied on Airbnb's misrepresentations and if he had known that Airbnb's representations were false, he would not have agreed to engage in a short-term rental of the Airbnb Property.

267.    By committing the acts alleged above, Airbnb knowingly made false, untrue and/or misleading statements and representations with the intent to induce Sebastian to rent the Subject Premises, and in doing so, violated section 17500, Business & Professions Code, resulting in injury in fact and loss of money and damages to Sebastian in an amount to be proven at trial.

268.    Plaintiff seeks an order, pursuant to section 17535, Business & Professions Code, for injunctive relief and restitution as authorized for violations of section 17500, Business & Professions Code. Specifically, Plaintiff demands that Airbnb remedy its violations by immediately suspending the listing for the Airbnb Property, and all listings for properties with fuel burning appliances, until (a) all fuel burning appliances have been professionally inspected and found to be safe for use, (b) all Airbnb properties with fuel burning appliances include carbon monoxide alarms, and (c) the listings for such properties are updated with information

regarding the existence of fuel burning appliances and instructions regarding the safe use and handling of such appliances.

269.     Plaintiff seeks declaratory and injunctive relief, including public injunctive relief, regarding the violations of section 17500, Business & Professions Code

270.     Plaintiff seeks an order, pursuant to section 17536, Business & Professions Code, assessing the maximum civil penalty for every violation, according to proof at the time of trial.

271.     As a proximate result of the above alleged conduct of Airbnb, Sebastian incurred compensatory damages prior to his death an amount to be proven at trial.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against the defendants, jointly and severally, and each of them individually as follows:

a.     For special and general damages according to proof at trial.

b.     For all economic and compensatory damages according to proof at trial.

c.     For funeral and burial expenses.

d.     For interest on all economic damages in the legal amount from October 5, 2022, to the date of judgment, subject to poof at trial.

e.     For punitive or exemplary damages.

f.     For court and trial costs, and other allowable costs, according to proof.

g.     For reasonable attorney's fees, costs and expenses, pursuant to applicable law.

h.     For injunctive relief, including public injunctive relief, pursuant to the Consumer Legal Remedies Act and Business and Professions Code, forcing Airbnb to remove all active listings without carbon monoxide alarms and to mandate the following in all Airbnb

properties: (i) the use of life saving devices such as carbon monoxide alarms, fire alarms, and fire extinguishers; (ii) the inspection of fuel burning appliances; and (iii) compliance with applicable building regulations as it pertains to carbon monoxide and fire related hazards.

i.      For Declaratory relief requested.

j.      For such other and further relief this Court deems appropriate under the circumstances.

DATED: June 14, 2023                    WISNER BAUM LLP


                                        _Timothy A. Loranger_
                                        Timothy A. Loranger
                                        Attorneys for Plaintiff

## VII.   **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable as a matter of right.

DATED: June 14, 2023                    WISNER BAUM LLP


                                        *Timothy A. Loranger*
                                        Timothy A. Loranger
                                        Attorneys for Plaintiff